IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HERTZ CORPORATION, and          :
HERTZ EQUIPMENT RENTAL CORPORATION,:
                                :
    Declaratory Plaintiffs,      :
                                :  Civil Action No. 2:06cv215
v.                              :
                                :
ZURICH AMERICAN INSURANCE COMPANY, :
and HARTMAN WALSH PAINTING COMPANY,:
                                :
    Declaratory Defendants.      :
_____:

## OPINION AND FINAL ORDER

On March 1, 2003, William Linnin – an employee of defendant Hartman Walsh Painting Company ("Hartman Walsh") – died in an industrial accident while operating a 110' Boom Lift (the "110' Lift") rented from plaintiff Hertz Equipment Rental Corp. ("HERC"). When Mr. Linnin's survivors brought a wrongful death action against HERC[1] in the Circuit Court of the City of Norfolk, Virginia, the company tendered defense of the case to Hartman Walsh pursuant to an indemnity provision in the applicable Rental Agreement. Hartman Walsh rejected the tender on the ground that it had not signed the Rental Agreement. This declaratory judgment action ensued.

_____

[1]Hertz Corporation, the parent corporation of HERC, is also a named defendant in the wrongful death action. For purposes of this Opinion, HERC and Hertz are used interchangeably.

Based on the evidence introduced by the parties at a bench trial and the application of relevant law, the Court **FINDS** that Hartman Walsh is contractually bound to defend and indemnify HERC in the state wrongful death action.  The Court further **HOLDS** that the indemnity provision set forth in the Rental Agreement is enforceable even though it effectively excuses HERC from the consequences of its own negligence.

## I.  Findings of Fact

### A.  Hartman Walsh's Business Dealings with HERC

Hartman Walsh is a commercial outdoor painting company headquartered in St. Louis, Missouri that works on projects across the country.  Rather than owning all of its own equipment, Hartman Walsh often rents equipment, such as generators, trucks, light poles, and lifts, for use at a particular site.  Up until the time of Mr. Linnin's death, HERC was one of Hartman Walsh's primary sources of rental equipment.

As a result of its high volume of business, Hartman Walsh was a "National Account" at Hertz.  This relationship was formalized in 1990 via a document called the National Account Agreement (the "NAA").  (Pl.'s Ex. 1.)  Some of the benefits of being a National Account customer are a pre-established credit limit, rebates tied to volume of business per year, expedited rentals, and a designated national account manager.  The NAA

contains a clause that says "[e]quipment rentals under this Agreement are subject to the terms of the Hertz rental agreement and Hertz' standard rental qualifications in effect at the time and place of rental."  (Pl.'s Ex. 1, ¶ 3.)  At no time during the negotiation or signing of the NAA was there any discussion of this paragraph or the standard terms of a Hertz rental contract.

### 1. __Equipment Rentals__

The store from which Hartman Walsh rented the 110' Lift was the HERC location in Virginia Beach, Virginia ("HERC Virginia Beach").  That location had a customary rental procedure for National Account customers.

The customer would request a certain piece of equipment on a certain date.  Because the customer was a National Account, all of the credit and billing information was already in the computer.  The customer would arrange either to pick up the equipment or to have the equipment delivered to a drop site or staging area.  Before making the delivery, HERC would generate two copies of a Rental Agreement using its "RentalMan" computer system.  One copy of the Rental Agreement was for the customer and one copy was to be signed by the customer and placed in HERC's "open file" until the equipment was returned.  Upon return, the Rental Agreement would be placed in the "dead file." It was not unusual for HERC to be unable to obtain a signature

from the customer at the time the equipment was delivered, for instance if the delivery occurred after hours.  In such instances, HERC would try to follow up with the customer to obtain a signature, either via fax or by returning to the job site.

The Rental Agreement is a two-sided document with the details of the particular rental transaction on the front side and general terms and conditions on the back.  There was evidence that the formatting and precise wording of HERC's Rental Agreements varied slightly from location to location and over time.  (Def.'s Exs. 2, 7, 8, 9.)  However, during the time surrounding the Busch Gardens project, HERC Virginia Beach used the same Rental Agreement for all rentals.

All Rental Agreements, regardless of their location or age, contained language identical to, or not materially different from, the following:

> 10.    INDEMNIFICATION.    For   and   in   additional consideration of providing the Equipment herein, CUSTOMER WILL DEFEND, INDEMNIFY AND HOLD HARMLESS HERC, ITS SUBSIDIARIES, PARENT COMPANY AND ITS AND THEIR OFFICERS, AGENTS AND EMPLOYEES, FROM AND AGAINST ALL LOSS, LIABILITY, CLAIM, ACTION OR EXPENSE, INCLUDING REASONABLE ATTORNEYS' FEES, BY REASON OF BODILY INJURY, INCLUDING DEATH, AND PROPERTY DAMAGE, SUSTAINED BY ANY PERSON OR PERSONS, INCLUDING BUT NOT LIMITED TO EMPLOYEES OF CUSTOMER, AS A RESULT OF THE MAINTENANCE, USE, POSSESSION, OPERATION, ERECTION, DISMANTLING, SERVICING OR TRANSPORTATION OF THE EQUIPMENT OR MOTOR VEHICLE OR CUSTOMER'S FAILURE TO COMPLY WITH THE TERMS OF THIS AGREEMENT, EVEN IF SUCH LIABILITY RESULTS IN ANY PART FROM THE ORDINARY NEGLIGENCE OF HERC, ITS AGENTS OR EMPLOYEES.  CUSTOMER WILL, AT ITS EXPENSE, COMPLY WITH

4

> ALL FEDERAL, STATE AND LOCAL LAWS AND REGULATIONS
> AFFECTING THE EQUIPMENT AND ITS USE, OPERATION, ERECTION,
> DESIGN AND TRANSPORTATION, INCLUDING WITHOUT LIMITATION
> LICENSING AND BUILDING CODE REQUIREMENTS AND WILL DEFEND,
> INDEMNIFY AND HOLD HERC HARMLESS FROM ALL LOSS, LIABILITY
> OR EXPENSE RESULTING FROM ACTUAL OR ALLEGED VIOLATIONS OF
> ANY SUCH LAWS, REGULATIONS, OR REQUIREMENTS.

(Def.'s Ex. 2.) (the "Indemnification Clause").  This clause appears on the back side of the Rental Agreement in extremely small print.  Principals and managers at Hartman Walsh were aware of the Indemnification Clause from previous rentals, and had signed Rental Agreements containing the language in the past. Hartman Walsh never protested the language to HERC and never expressly refused to sign a Rental Agreement.

## 2.  **Insurance**

The standard HERC Rental Agreement also contained boilerplate terms regarding insurance.  Specifically, the Rental Agreement required the lessee (Hartman Walsh) to carry liability insurance by stating the following:

> 9. INSURANCE. (a) Liability Insurance for Injury/Damage
> to Third Parties - Customer will, at its own expense and
> at all times during the term of this Agreement, maintain
> in force applicable liability insurance policies as
> described below, each of which shall include liability
> limits written on a combined single limit basis of not
> less than $1,000,000 per occurrence: (1) For Equipment
> Rental not including motor vehicles, a Commercial General
> Liability Insurance Policy which must include contractual
> liability coverage; and (2) if the Equipment Rental
> includes motor vehicles, a Business Automobile Liability
> Insurance Policy which must include coverage for non-
> owned motor vehicles. . . .

5

(Def.'s Ex. 2.) (the "Insurance Clause").

Hartman Walsh had in effect at the time of the accident a Commercial General Liability Insurance Policy (Pl.'s Ex. 9) (the "CGL Policy") purchased from defendant Zurich American Insurance Co.  The CGL Policy allowed Hartman Walsh to name third parties as additional insureds under the policy.  This could occur in one of two ways.  First, Hartman Walsh could affirmatively request that Zurich list a third party as an additional insured. Alternatively, if a contract between Hartman Walsh and a third party required that the third party become an additional insured, the CGL Policy would automatically cover that third party.

When the CGL policy came up for renewal in 2002, Hartman Walsh's insurance broker, J.W. Terrill, Inc., handled the renewal process.  Part of the process includes the naming of additional insured third parties.  In the course of the 2002 renewal process, Hartman Walsh requested that Hertz be named an additional insured for purposes of automobile liability.

Upon renewal of Hartman Walsh's CGL Policy, J.W. Terrill generated a Certificate of Liability Insurance (Pl.'s Ex. 2) (the "Certificate") and sent it to HERC.  The Certificate provides a "snapshot" of Hartman Walsh's insurance coverage from all insurers.  It states at the top "THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICY BELOW."  With regards to "Leased and Rented Equipment," the Certificate

6

identifies non-defendant Travelers Indemnity Co. as Hartman
Walsh's insurer for those items.  Finally, the Certificate states
"Hertz Equipment Rental Corp. is included as a Additional
Insured-Lessor for Automobile Liability and Loss Payee for
Physical Damage with respect to leased/rented vehicles by the
Named Insured."  The Certificate was not issued to HERC at HERC's
request or in connection with any particular transaction.

**B.   <u>Rental of the 110' Lift and the Busch Gardens Accident</u>**

Hartman Walsh called the Virginia Beach HERC location on
November 6, 2002 to request delivery of a 110' Boom Lift to Busch
Gardens.  The "RentalMan" system at HERC Virginia Beach produced
Rental Agreement No. 4059983 for this transaction.  HERC
delivered the lift early on the morning of November 15th.  (Pl.'s
Ex. 5.)  HERC was unable to secure a signature on the Rental
Agreement at the time it delivered the equipment.

Hartman Walsh began using the 110' Lift and paid all charges
relating thereto.  It is unclear what efforts, if any, HERC
undertook to get the Rental Agreement signed, but there was no
evidence that Hartman Walsh ever affirmatively refused to sign
it.[2]  In any event, there was still no signed Rental Agreement
for the 110' Lift on March 1, 2003, the date of Mr. Linnin's

---

[2]HERC delivered other equipment to the Busch Gardens site on
other days, and some, if not all, of those agreements were
signed.  (Def.'s Exs. 4, 5.)  All of those agreements contained
the Indemnification and Insurance Clauses.

accident.

At some point after the accident, someone at HERC Virginia Beach realized that the Rental Agreement was not yet signed and took steps to remedy the problem.  The signature of Bill Glass, a Hartman Walsh foreman on the Busch Gardens job, appears on one version of Rental Agreement No. 4059983.  (Def.'s Ex. 1.)  This is the only signed copy of the Rental Agreement in either party's possession.  It was found by HERC Virginia Beach in its "Dead File," but consists only of the front page of the standard HERC Rental Agreement.  The signed copy of Rental Agreement No. 4059983 does not contain the back page on which the Insurance Clause and the Indemnification Clause appear.  Mr. Glass testified that he does not remember signing any Rental Agreement, but conceded that his signature appears on the document.  There are other versions of Rental Agreement No. 4059983 that contain the standard terms and conditions on the reverse side, but none of those versions bear a Hartman Walsh signature.


C.   **The Wrongful Death Action**

Mr. Linnin's wife, as executor of his estate, brought a wrongful death action pursuant to Va. Code Ann. § 8.01-50 et seq. (2007) against Hertz and HERC in the Circuit Court of the City of Norfolk, Virginia.  (Docket No. 5, Ex. B.)  She alleges that Hertz and HERC negligently maintained the 110' Lift, that they

negligently failed to warn and instruct the user of the danger of the 110' Lift, and that they breached express and implied warranties applicable to the 110' Lift.  Mrs. Linnin seeks damages resulting from the loss of companionship, services, wages, solace, etc. from her husband.  Upon receipt of the state court Motion for Judgment, Hertz and HERC tendered defense of the case to Hartman Walsh and Zurich pursuant to the Indemnification Clause and the Insurance Clause in the standard HERC Rental Agreement.

## II.  <u>Conclusions of Law</u>

### A.   <u>HERC is Not an Additional Insured Under Hartman Walsh's CGL Policy</u>

HERC argues that Zurich has a duty to defend and indemnify HERC in the state action by virtue of the Certificate of Liability Insurance as well as the Insurance Clause on the HERC Rental Agreement.  The Court **HOLDS** that HERC's direct claims against Zurich lack merit.

#### 1.  <u>The Certificate of Liability Insurance Does Not Create a Legal Obligation</u>

The Certificate of Liability Insurance has no legal effect or meaning.  This conclusion is less a result of legal analysis than an exercise in reading.  The Certificate plainly states that it does not extend or alter any existing insurance coverage.

There was no legal consideration for production of the Certificate and it has no tie to any rental transaction. The Certificate is thus more akin to a brochure than a contract creating legal obligation.

Even if the Certificate created a legal obligation, it does not purport to impose on Zurich any duty to defend or indemnify Hertz for tort claims such as the one at issue here. It lists a different insurer with regard to leased and rented equipment, and only identifies Hertz as an additional insured for "physical damage" to automobiles. The 110' Lift is certainly classified as "leased and rented equipment" as opposed to an automobile.

### 2. The Insurance Clause Does Not Obligate Hartman Walsh to List HERC as an Additional Insured

Similarly, it is plain that the Insurance Clause does not impose upon Zurich a duty to defend or indemnify Hertz. As stated above, the CGL policy automatically deems a third party an additional insured if a contract between Hartman Walsh and the third party so requires. However, the Insurance Clause in Rental Agreement No. 4059983 does not impose such an obligation on Hartman Walsh. The Clause states, in relevant part, that Hartman Walsh must,

> maintain in force applicable liability insurance policies as described below, each of which shall include liability limits written on a combined single limit basis of not less than $1,000,000 per occurrence: (1) For Equipment

10

> Rental not including motor vehicles, a Commercial General
> Liability Insurance Policy which must include contractual
> liability coverage . . . .

All this language requires is that Hartman Walsh insure itself.
It says nothing about Hartman Walsh insuring HERC, or anyone else
for that matter.  This makes perfect sense.  HERC certainly wants
to know that its lessees have adequate liability coverage should
the lessee and HERC be found jointly liable to a third party.
For instance, if the 110' Lift had injured a Busch Gardens
employee and that employee sued HERC and Hartman Walsh, the
Insurance Clause mandates that Hartman Walsh be able through
insurance to satisfy its portion of any resulting judgment.

For the reasons outlined above, HERC has no valid basis upon
which to demand defense and indemnification directly from Zurich.
The Court therefore **DECLINES** to enter Declaratory Judgment
against Zurich and all of HERC's claims against Zurich are
**DISMISSED WITH PREJUDICE**.


**B.   Hartman Walsh Is Contractually
      Obligated to Defend and Indemnify HERC**

HERC's claim against Hartman Walsh is not so easily
resolved.  The question is how to characterize the relationship
between HERC and Hartman Walsh with respect to rental of the 110'
Lift in light of HERC's failure to obtain a signed Rental
Agreement prior to Mr. Linnin's accident, and in light of the

11

fact that the Rental Agreement that ultimately was signed lacked a reverse side.  Stated alternatively, is the Indemnification Clause contained in the standard HERC Virginia Beach Rental Agreement enforceable against Hartman Walsh?  Because the question is whether a contract exists, Virginia law governs the analysis in this diversity action.[3]  Limbach Co., LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005).

HERC offers two legal theories under which the Indemnification Clause may still be enforced against Hartman Walsh despite the lack of a signed contract at the time of the accident.  HERC's first argument is that the NAA incorporates by reference subsequent Rental Agreements, and thus the terms of those Rental Agreements are automatically binding.  The second argument is that the parties' respective actions with regard to the 110' Lift, when combined with their extensive rental history, give rise to an objective manifestation of intent to be bound by the terms of the standard HERC Virginia Beach Rental Agreement.

---

[3]If a contract between the parties is found to exist under Virginia law, the interpretation of that contract is governed by New Jersey law pursuant to choice of law provisions in both the NAA and the Rental Agreement.  See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc., 397 S.E.2d 804, 807 (Va. 1990).

     **1.**  **The NAA Does Not Incorporate Subsequent**
          **Rental Agreements by Reference**

HERC asserts that the statement, "[e]quipment rentals under this Agreement are subject to the terms of the Hertz rental agreement and Hertz' standard rental qualifications in effect at the time and place of rental," contained in the NAA incorporates the terms of the HERC Rental Agreement by reference.  It is axiomatic in the law of contracts that, in order to incorporate a secondary document into a primary document, the identity of the secondary document must be readily ascertainable.  See Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship."); PainWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) ("[I]n order to uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.") (citations omitted); Cary v. Holt's Exam'rs, 91 S.E. 188, 191 (Va. 1917).

The language in the NAA does not provide the fixed target that is required for incorporation by reference.  The clause states that rentals will be subject to the rental agreement "in effect at the time and place of rental."  This phrase implies

13

that the rental agreements are subject to change, and thus it does not refer to one specific model contract.  Moreover, the evidence regarding the negotiation and signing of the NAA shows that there was no standard rental agreement presented to Hartman Walsh or discussed by the parties.  Thus, it cannot be said that the parties had agreed on the terms of a rental agreement at the time.  At best, the NAA language is evidence of Hartman Walsh's knowledge that rental agreements exist and that they have terms and conditions.

>        **2.   The Actions of the Parties Objectively Manifest an Intent to be Bound by the Terms of the Rental Agreement**

HERC's second argument is more persuasive.  HERC argues that the thirteen-year rental history between the parties and the actions of the parties with respect to the 110' Lift combine to show that the parties had a meeting of the minds with respect to the terms of the rental.  Hartman Walsh replies that HERC's failure to get a signature in the four months between delivery of the lift and Mr. Linnin's accident precludes HERC from availing itself of the Indemnification Clause.[4]  For the reasons set forth below, the Court agrees with HERC and finds that the terms of the

---

[4]Hartman Walsh, in its post-trial briefing, invites the Court to infer from this four-month delay that HERC actually tried to obtain a signature, but Hartman Walsh refused.  Because there is no  evidence to support this inference, the Court declines Hartman Walsh's invitation.

standard HERC Virginia Beach Rental Agreement apply to the rental of the 110' Lift.

HERC's argument is a combination of the concepts of course of dealing and acceptance by performance.  However, before delving too far into the legal analysis, it is necessary to summarize the relevant facts.  Hartman Walsh had been renting equipment from Hertz for thirteen years.  For at least the last several years, all of the rentals produced a Rental Agreement, and all of those agreements had clauses akin or identical to the Indemnification Clause.  Some of those agreements were signed by Hartman Walsh upon receipt of the equipment, and some were signed at a later time.  Hartman Walsh knew of the Indemnification Clause, but never affirmatively objected to it.[5]  HERC failed to obtain a signature for the rental of the 110' Lift for over four months, and the agreement that was ultimately signed lacked the reverse side containing the indemnification language.

---

[5]The President of Hartman Walsh testified that the company had an unwritten policy regarding the signing of rental agreements.  That alleged policy provided that the company would sign agreements containing indemnification clauses for "non-dangerous" equipment like compressors and light towers.  However, the company would not sign agreements that had indemnification language for "dangerous" equipment like access equipment and lifts.  The Court finds this testimony somewhat unbelievable given its self-serving nature and the existence of signed rental agreements for other "dangerous" equipment.  (Pl.'s Ex. 7.) However, the testimony confirms Hartman Walsh's awareness of the indemnification language in the HERC Rental Agreement.

The base-line requirement for finding the existence of a contract, written, oral, implied, or otherwise, is a showing of mutual assent at the time of agreement, _i.e._, the proverbial "meeting of the minds."  Snyder-Falkingham v. Stockburger, 457 S.E.2d 36, 39 (Va. 1995).  This question of fact is determined objectively, from a third-person perception of the words and actions of the parties, without regard to the subjective intent or assumptions of the parties.  Id.  Thus, the question before the Court is whether an objective appraisal of the words and actions of the parties prior to Mr. Linnin's accident compels the conclusion that the parties intended to be bound by the terms of the HERC Virginia Beach Rental Agreement in use at the time.

### a.  Course of Dealing Alone Does Not Establish an Intent to be Bound by the Rental Agreement in This Case

Hartman Walsh argues that the concept of a course of dealing does not get HERC where it wants to go, and the Court agrees to an extent.  Under Virginia law, course of dealing is most often used to show mutual assent to a modification of an existing contract.  E.g. Cardinal Dev. Co. v. Stanley Constr. Co., 497 S.E.2d 847, 851 (Va. 1998); Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983).  The Court has been unable to find any Virginia case law to support the proposition that course of dealing, standing alone, can lead to an implied

contract with complex terms and conditions.  Thus, in this case, the parties' course of dealing does not a contract make. However, this conclusion does not render the course of dealing totally irrelevant.

### b.  Hartman Walsh's Actions with Regard to the 110' Lift Manifest an Acceptance of the Terms of the Rental Agreement

HERC's strongest argument for finding the existence of a contract containing the Indemnification Clause is that by continuing to pay for and use the 110' Lift while knowing of HERC's boilerplate language, Hartman Walsh objectively agreed to the standard HERC Virginia Beach Rental Agreement.  This argument incorporates course of dealing into the concept of acceptance by performance.  The Virginia case most factually and legally on point is <u>Galloway Corp. v. S.B. Ballard Construction Co.</u>, 464 S.E.2d 349 (Va. 1995), in which the Supreme Court of Virginia ruled that a party was bound by a contract even though the party had not signed it.  The court stated:

> Apparently through an oversight, . . . Empire's president failed to sign the final contract . . . .  As Empire undertook to perform the contract according to its terms, an acceptance by performance resulted.  The absence of an authorized signature does not defeat the existence of the contract . . . .

<u>Id.</u> at 356.  In other words, regardless of a signature, the party's actions yielded an objective manifestation of agreement to the contract.  <u>See generally</u> 17 Am. Jur. 2d <u>Contracts</u> § 96

17

(2006) (discussing acceptance by performance).

A similar situation exists in this case.  The four-month delay in getting a signature on the 110' Lift Rental Agreement is the result of nothing more than oversight.  There is absolutely no evidence that the parties were haggling over the terms of the agreement, or even that Hartman Walsh was deliberately avoiding signing the contract.[6]  Instead, Hartman Walsh was using the lift and paying the rental fees, just as it was doing for the several other rentals used in the Busch Gardens job.  All of those other rentals were governed by the standard HERC Virginia Beach Rental Agreement, and all of those agreements were signed by various employees of Hartman Walsh.  There is no credible evidence that Hartman Walsh treated the 110' Lift any differently than the other rentals, and even less evidence that Hartman Walsh communicated any such distinction to HERC.  The Court will not allow an administrative mistake to defeat the objectively manifested mutual expectations of the parties.

Based on the foregoing, the Court **FINDS** that the parties agreed, as evidenced by their conduct, that the rental of the

---

[6]Even if Hartman Walsh had deliberately avoided signing the Rental Agreement, this fact would be irrelevant unless it changed the objective impression of Hartman Walsh's conduct.  If Hartman Walsh deliberately remained silent, a third party's objective impression would be the same.  It would be a different case if HERC had made several requests for Hartman Walsh to sign the contract and Hartman Walsh had delayed or equivocated with blatant pretext.  This scenario would lead to the objective impression that Hartman Walsh did not want to sign the contract.

110' Lift would be governed by the standard HERC Virginia Beach
Rental Agreement in use at the time of the rental.[7]  This Rental
Agreement contains the Indemnification Clause.  Thus, the only
remaining question is whether the Indemnification Clause is
enforceable.

C.    **The Indemnification Clause is Enforceable**

Whether the Indemnification Clause is enforceable against
Hartman Walsh is not a foregone conclusion.  The Clause is
exceedingly onerous in that it transfers all of the risk of
HERC's negligence to a potentially innocent lessee – Hartman
Walsh in this case.  Indeed, such provisions were thought to be
against public policy in Virginia until very recently.  Estes
Express Lines, Inc. v. Chopper Express, Inc., 641 S.E.2d 476,
479-80 (Va. 2007).

However, as previously stated, supra n.3, New Jersey law
governs the interpretation and enforcement of the Rental
Agreement if an intent to be bound is found to exist.  A review
of the New Jersey case law reveals that Indemnification Clauses
such as the one in the HERC Rental Agreement are enforcable so
long as the contract language unambiguously obligates the

_____

[7]As a result of this finding, the issue of whether Bill
Glass had authority to sign the Rental Agreement is moot.  The
Court's conclusion would be the same even if there had never been
a signed Rental Agreement.

19

indemnitor to defend and indemnify the indemnitee for the
indemnitee's own negligence.  Azurak v. Corporate Prop.
Investors, 814 A.2d 600, 601 (N.J. 2003); Mantilla v. NC Mall
Assocs., 770 A.2d 1144, 1148-49 (N.J. 2001);  Ramos v. Browning
Ferris Indus., 510 A.2d 1152, 1159-60 (N.J. 1986).

In this case, the Indemnification Clause unambiguously
obligates the "Customer" (Hartman Walsh) to defend and indemnify
HERC and its parent or subsidiaries for all claims, brought by
anyone, having anything to do with the "Equipment" (the 110'
Lift), "even if such liability results in any part from the
ordinary negligence of HERC."  Hartman Walsh is a sophisticated
company that has rented equipment under agreements with this
exact indemnification obligation numerous times before.  Although
the Indemnification Clause is extraordinarily broad and the Court
questions why anyone would agree to operate under such an onerous
provision for everyday rental transactions, the Clause is
nevertheless unambiguous in its reach and application.

### III.  Conclusion

For the reasons set forth above, the Court **DECLINES** to enter
Declaratory Judgment against Zurich and **GRANTS** Declaratory
Judgment against Hartman Walsh.  Hartman Walsh must defend and
indemnify HERC and Hertz for the negligence claims asserted in
the wrongful death action.

The Clerk is **DIRECTED** to forward a copy of this Opinion and
Final Order to all counsel of record.

**IT IS SO ORDERED.**

                                          _____/s/_____
                                                Walter D. Kelley, Jr.
                                          UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 17, 2007